# UNITED STATES DISTRICT COURT

for the

District of Oregon

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Apple iPhone 13 Pro Max in a blue case, serial # CF26YD4RQG, currently located at 9109 NE Cascades Parkway, Portland, Oregon 97220

Case No. 3:26-mc-00897 - D

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Apple iPhone 13 Pro Max in a blue gray case, serial # CF26YD4RQG, currently located at 9109 NE Cascades Parkway, Portland, Oregon 97220 as described in Attachment A4 hereto.

located in the ________ District of Oregon , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1349 | Conspiracy to Commit Fraud |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* ________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Tyler Esswein By Phone
*Applicant's signature*

Special Agent Tyler Esswein, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone at 5:07 pm *(specify reliable electronic means)*.

Date: September 9, 2026

Youlee Yim You
*Judge's signature*

City and state: Portland, Oregon

Youlee Yim You, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss: AFFIDAVIT OF **SPECIAL AGENT TYLER ESSWEIN**

**Affidavit in Support of an Application Under Rule 41**
**for a Warrant to Search and Seize Evidence Including Digital Evidence**

I, **Tyler Esswein**, being duly sworn, do hereby depose and state as follows:

## Introduction and Agent Background

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May 2017. My current assignment is Complex Financial Crimes. In this capacity, I investigate a variety of violations to include investment scams, wire and bank frauds, and money laundering. My training and experience includes extensive specialized training including completing the 21-week New Agent Training course at the FBI Academy in Quantico, Virginia. In my role as a Special Agent for the FBI, I have participated in many aspects of investigations, including conducting physical surveillance, assisting in managing and recruiting confidential sources, interviewing witnesses, subjects, and victims, performing arrests, and executing search warrants. Through these investigations, I have become familiar with methods and techniques used by individuals to conduct fraud and investment scams. In the course of investigations, I have utilized the techniques such as the use of grand jury subpoenas for banking information, medical records, subscriber information, and social media accounts. I have also interviewed numerous victims and witnesses to fraud crimes, and exploited the information provided to solidify evidence against the subjects of those investigations. Prior to my employment as a Special Agent, I worked as a certified public accountant (CPA) for approximately seven years.

/ / / /

/ / / /

2. I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search and examination of the following:

- A Samsung Tracfone (Attachment A1)
- A white Apple iPhone 12 (Attachment A2)
- An Apple iPhone 12 in a black case (Attachment A3)
- An Apple iPhone 13 Pro Max in a blue case (Attachment A4)
- An Apple iPhone 17 Pro Max in a black case (Attachment A5)
- An Apple iPad (Attachment A6)

(hereinafter "Devices"), which are currently stored, in law enforcement possession, at the FBI Portland Evidence Control Room located at 9109 NE Cascades Parkway, Portland, Oregon 97220, as described in Attachment A1, A2, A3, A4, A5 and A6 hereto, and the extraction of electronically stored information from the Devices, as described in Attachment B hereto. As set forth below, I have probable cause to believe and do believe that the items set forth in Attachment B constitute evidence contraband, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1349 and 1343, conspiracy to commit wire fraud and wire fraud.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4. 18 U.S.C. § 1349 (conspiracy to commit wire fraud) requires evidence that: (1) two or more persons agreed to commit wire fraud; and (2) a defendant willfully joined the conspiracy with the intent to further its unlawful purpose. 18 U.S.C. § 1343 (wire fraud) requires evidence that: (1) there was a scheme to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

## Statement of Probable Cause

5. On August 17, 2026, the government submitted a criminal complaint (case number 3:26-mj-00227) alleging that Daejon Labrayae Love and Taylor Jamie Chan engaged in an elaborate multi-year scheme in which they convinced numerous women to send them money for fictitious investments. As alleged the criminal complaint, Love and Chan both made material false statements regarding their profession, wealth, investment acumen, and investment opportunities. On that same day, The Honorable Jolie A. Russo, U.S. Magistrate Judge for the District of Oregon, issued warrants for the arrests of both Love and Chan.

6. Prior to the issuance of the criminal complaint and arrest warrants, investigators interviewed numerous victims of Love and Chan who stated that the two used electronic devices to communicate with them in furtherance of their scheme. Based on those interviews, in May of 2026, investigators executed a search warrant (3:26-mc-00498) for the contents of six iCloud

accounts belonging to Love and Chan. During the search, investigators observed both Love and Chan using cellphones in the commission of their conspiracy to commit wire fraud. Searches of those iCloud accounts revealed numerous communications between Love, Chan and their many victims, in furtherance of the conspiracy. These communications were made using the Devices described in Attachments A2 through A5.

7. Specifically, Love used the cellphone with the assigned number 360-946-xxxx (investigators believe this number is assigned to one of the two devices described in Attachments A4 and A5) and Chan used the cellphone with assigned phone number 415-298-xxxx (as described in Attachment A3) to conspire between themselves and exchange fictitious investment details which Love and Chan shared with victims. I know from interviewing many victims that Love used cellphones with assigned phone numbers 952-245-xxxx (as described Attachment 2) and 718-864-xxxx (investigators believe this number is assigned to one of the two devices described in Attachments A4 and A5) to primarily communicate with victims.

8. On August 20, 2026, following the issuance of arrest warrants for Love and Chan, investigators submitted and executed search warrants (3:26-mc-00838, 00839 and 00840) for location data for all four of the assigned phone numbers described above. Investigators used that data to locate and arrest Love and Chan at the Boise Airport in Boise, Idaho, on August 24, 2026.

9. Proximate to Love and Chan's arrests, investigators located all four cellular phones, as described in Attachments A2 through A5. Two of Love's cellphones (Attachments A4 and A5) were seized from Love's person, while an Apple iPhone 12 in a black case (Attachment A3) was seized from Chan's person incident to his arrest.

10. In addition, after Love was arrested, investigators seized two more electronic devices investigators believe Love used in the commission of the scheme.

11. One of the newly discovered devices is a Samsung Tracfone (as described in Attachment A1) placed outside by the property manager of an Airbnb located in Boise, Idaho, investigators confirmed Love was staying at on the day of his arrest. Because Love abandoned his personal items at the Airbnb after the agreed upon checkout time at 11:00 AM on August 25, 2026, the Samsung Tracfone was placed by the property manager outside the residence along with other items belonging to Love. Investigators took possession of the abandoned items, including the Samsung Tracfone, shortly after the property manager placed them outside the Airbnb. I know from the investigation that before he was arrested, Love was in the Boise, Idaho area to meet with a victim and to solicit new potential victims.

12. Investigators seized Love's white Apple iPhone 12 (Attachment A2) from the same Airbnb they recovered Love's other property from.

13. Another newly discovered electronic device seized by investigators is an Apple iPad tablet (as described in Attachment A6) seized from a white 2026 Dodge Ram 1500 bearing California license plate number 91911L4 (hereinafter "Dodge Ram") Love drove. Investigators confirmed with a Dodge car dealership the Dodge Ram was purchased in the San Diego, California area by a woman (hereinafter "Adult Witness-1" or "AW-1") I know from this investigation to have previously dated Love. AW-1 stated, and agents confirmed, AW-1 was the registered owner of the Dodge Ram. AW-1 stated she allowed Love to drive the vehicle. Following Love's arrest, another woman who is a newly identified victim of the romance/investment scheme residing in Idaho, gave investigators the Dodge Ram's location and confirmed that Love was driving the vehicle around the time of his arrest. Investigators located the Dodge Ram parked on a public street in front of an apartment complex in Boise, Idaho. Upon AW-1's request, local Dodge dealership staff moved the vehicle to a local car dealership for safekeeping. AW-1 subsequently gave

dealership staff consent to enter the Dodge Ram and remove the Apple iPad along with other property belonging to Love. Investigators subsequently seized the Apple iPad.

14. Based on my training and experience, I know individuals who perpetrate romance and investment schemes often use electronic devices, such as cellphones and tablets, to communicate with victims and co-conspirators. I also know from my training and experience that these individuals also use these devices to promote their scheme and misrepresentations online, find and coerce new victims, and launder proceeds of their scheme and engage in other transactions financed by their ill-gotten gains.

15. Based on my knowledge of the investigation, I believe Love might have been perpetrating similar fraud as early as 2013. This investigation has generated significant interest from news outlets and on online social media platforms. Users posting on social media platforms have claimed to be defrauded by an individual investigators believe is Love. Investigators have also received new reports from alleged victims of fraud or attempted fraud by Love dating back to 2019. For example, in an anonymous 2024 post on the social media platform Reddit, one user alleged that a man posing as a San Francisco 49ers player defrauded them out of money. This user also claimed that this individual had been defrauding victims for ten years. Based on the details provided in the post, investigators believe that the user was referring to Love. Furthermore, investigators and Department of Justice officials have spoken at length with a source who is intimately familiar with Love's fraudulent activity. The source informed investigators that Love defrauded a woman who the source was closely associated with in 2020. The source further informed investigators that they believe Love has been defrauding victims since at least 2013.

/ / / /

/ / / /




16. Based on my knowledge of the investigation, I know Love and Chan used the Devices described in Attachments A2 through A5 extensively to conspire between themselves, and to communicate with victims. Love also used some of the Devices to distribute misleading imagery and statements related to his employment and association with the NFL, wealth, investment prowess, and social standing in furtherance of the scheme. Given that Love has used electronic devices to commit wire fraud and conspire to do so, I believe the Samsung Tracfone and

Apple iPad electronic devices described in Attachments A1 and A6 were also used to facilitate the scheme and contain relevant evidence.

17. I therefore believe there is probable cause to believe that the electronically stored information described in Attachment B is recorded on the Devices described in Attachments A1 through A6.

18. Accordingly, this affidavit seeks to search for records relating to: electronic and oral messages between Love and Chan, their known and unknown victims, and possible co-conspirators; social media accounts, including but not limited to Instagram, Facebook, and LinkedIn; online dating platforms, including but not limited to Bumble, Hinge, Tinder, Facebook Dating and BLK; brokerage accounts, both real and fictitious; bank accounts, both real and fictitious; financial transactions; net worth documents; income and expense records including bills and credit card records; gambling records; records concerning property and vehicle ownership; identification documents; and information pertaining to Love and Chan's travel.

19. The Devices are currently in the lawful possession of the FBI.

20. The Devices are currently in storage at 9109 NE Cascades Parkway, Portland, Oregon 97220. In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. *Wireless telephone*. A wireless telephone (or mobile telephone, or cellular telephone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers,

enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. *Digital camera*. A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. *Portable media player*. A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability

to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. *GPS*. A GPS navigation device uses the Global Positioning System to display its current location. It often contains historical records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated as "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. *PDA*. A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. *Tablet*. A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving email, and participating in Internet social networks.

g. *Storage medium*. A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

h. *IP address*. An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. *Internet*. The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data

stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the Devices because, based on my knowledge, training, and experience, I know:

a. Data on the Devices can provide evidence of a file that was once on a Device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the device at a relevant time. Further, forensic evidence on a device can show how and when the device was accessed or used. Such "timeline" information allows the forensic analyst and investigators to

understand the chronological context of access, use, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the device user. Last, forensic evidence on a device may provide relevant insight into the device user's state of mind as it relates to the offense under investigation. For example, information on a device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the device or password protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a computer (e.g., logs indicating that the incriminating information was accessed with a particular program).

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not

present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

25. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

26. The review of the Devices will be performed within a reasonable amount of time not to exceed 365 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 365-day period from the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension from the Court.

27. If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Devices or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

28. If an examination is conducted, and it is determined that the Devices do not contain any data falling within the ambit of the warrant, the government will return the Devices to its owner within a reasonable period of time following the search and will seal any image of the Devices, absent further authorization from the Court.

29. If the Devices contain evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Devices as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Devices and/or the data contained therein.

30. The government will retain a forensic image of the Devices for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

31. *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## Conclusion

32. Based on the foregoing, I have probable cause to believe, and I do believe, that the Devices described in Attachments A1, A2, A3, A4, A5 and A6 contain evidence and contraband, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1349 and 1343, conspiracy to commit wire fraud and wire fraud, as set forth in Attachment B. I therefore request that the Court issue a warrant authorizing a search of the Devices described in Attachments A1, A2, A3, A4, A5 and A6 for the items listed in Attachment B and the seizure and examination of any such items found.

33. Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Bryan Chinwuba. I was informed that it is AUSA Chinwuba's opinion that the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

*By phone pursuant to Fed. R. Crim. P. 4.1*
Tyler Esswein
Special Agent, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 5:07 pm on September 9, 2026.

Youlee Yim You
HONORABLE YOULEE Y. YOU
United States Magistrate Judge

## ATTACHMENT A4

### Property to Be Searched

The property to be searched is an Apple iPhone 13 Pro Max in a blue case, serial # CF26YD4RQG, and is currently located at the FBI Portland Evidence Control Room located at 9109 NE Cascades Parkway, Portland, Oregon 97220.

## ATTACHMENT B

### Items to Be Seized

1. All records on the Device described in Attachments A1, A2, A3, A4, A5 and A6 that relate to violations of 8 U.S.C. §§ 1349 and 1343, conspiracy to commit wire fraud and wire fraud and involve Daejon Labrayae Love (Love) and Taylor Jamie Chan (Chan) since 2013, including:

   a. All communications, photographs and videos involving Daejon Love, Taylor Chan, any co-conspirators, and victims including evidence of their conspiracy to commit wire fraud and launder proceeds of wire fraud including notes, names, addresses and other identification used in the transfer of money;

   b. Property records: deeds, contracts, rental documents, and other evidence related to the rental property, income and expenses of Love, Chan, any co-conspirators, and victims;

   c. Indicia of occupancy, residency, and/or ownership of assets such as utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, and mortgage statements;

   d. Evidence of personal property ownership: registration information, ownership documents, or other evidence of personal property such as documentation related to vehicles, boats, jewelry, international and domestic travel, hotel stays, and other evidence of unexplained wealth;

   e. Individual financial records, receipts, notes, and all records relating to income, profit, expenditures, or losses and/or laundering of money, such as:

f. Employment records: paychecks or stubs, records of employment tax withholdings and contributions, dividends, and stock certificates;

g. Savings accounts, statements, deposit tickets, ledger cards, register records, wire transfer records, correspondence, and withdrawal slips;

h. Checking accounts: statements, canceled checks, deposit tickers, credit/debit documents, wire transfer documents, correspondence and register records;

i. Loan accounts: financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage records;

j. Collection account statements and other-related records;

k. Certificates of deposit: applications, purchase documents and statements of accounts;

l. Credit card accounts: credit cards, monthly statements, and receipts of use;

m. Receipts and records related to gambling wins and losses, or any other contest winnings;

n. Insurance: policies, statements, bills and claim-related documents

o. Documentation showing:

    i. The source, receipt, transfer, control ownership, and disposition of United States and/or foreign currency; and

    ii. Evidence of the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

p. Records and information related to investments, real or fictitious

q. Records and information related to the San Francisco 49ers, other NFL teams, and the NFL at large.

r. Records and information related to bank accounts, investment accounts, and securities or commodities trading platforms.

s. Records and information related to

t. Information recording Love and Chan's schedule or travel from 2013 to August 24, 2026.

u. Bank records, checks, credit card bills, account information, and other financial records.

v. Identification documents and information pertaining to Love and Chan's travel.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. Records evidencing the use of the Internet, including:

a. Records of Internet Protocol addresses used.

b. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

c. Records of data storage accounts and use of data storage accounts.

4. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Search Procedure**

5. The examination of a Device may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

6. The review of a Device will be performed within a reasonable amount of time not to exceed 365 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 365-day period from the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension from the Court.

7. If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on a Device or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8. If an examination is conducted, and it is determined that a Device does not contain any data falling within the ambit of the warrant, the government will return the Device to its owner within a reasonable period of time following the search and will seal any image of the Device, absent further authorization from the Court.

9. If a Device contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Device as evidence, fruits, contraband, or an

instrumentality of a crime or to commence forfeiture proceedings against the Device and/or the data contained therein.

10. The government will retain a forensic image of a Device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.